Masse, Appellant, *v.* Quartucci.

Argued September 27, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ. (GUNTHER, J., absent).

*S. I. Sacks*, with him *Sacks and Piwosky*, for appellant.

*James Dessen*, for appellee.

OPINION BY ROSS, J., January 17, 1952:

This is an appeal from the refusal of a new trial after judgment for the garnishees in an action of attachment sur judgment. The plaintiff secured a judgment in assumpsit against the defendant Quartucci and thereafter issued an attachment sur judgment against Albert J. Mellon et al., garnishees. The garnishees' answer, while admitting business transactions with the defendant, averred that they were in possession of no balance due to Quartucci, stating that Quartucci had improperly performed certain work for them and that the cost of having the work done by another contractor

exhausted "in its entirety" any funds which would have been due Quartucci had his work been satisfactory.

The cause was heard by a judge sitting without a jury and after finding that the garnishees had a setoff to all but $5.00 of any amount due the defendant, the court entered judgment for the garnishees since the sum due was less than "customary" garnishees' attorney's fees. Plaintiff's motion for a new trial was dismissed and this appeal was taken.

The evidence adduced at the trial may be summarized as follows: Albert J. Mellon, Sr. testified that he had engaged the defendant Quartucci to do some hauling for him and that the cost of the hauling was $656.60. He testified further that at or about the same time the defendant built a cesspool for him and that the agreed price for this work was $450.00 or "thereabouts", that of the $1106.60 due the defendant upon the completion of both jobs only the sum of $650.00 was paid and that no further payment was made to defendant because the cesspool collapsed and had to be rebuilt by the garnishees at a cost of $451.00.

A disputed item in the list of expenditures for the cesspool was a power shovel rented by the garnishees from one Margerum. When asked what the rent for the shovel was, Mr. Mellon replied, "I paid $168.00 to dig that well out"; and, later in his testimony, he stated that the sum of $168.00 was paid to Margerum for the use of the shovel. A check payable to Margerum and signed by Mellon in the amount of $168.00 was identified by the latter as the instrument by which the rental of the shovel was paid, and this check was admitted into evidence over the objection of the plaintiff.

The principal contention of the plaintiff is that the trial court erred "in permitting secondary evidence" of the payment of rental for the power shovel without requiring a satisfactory reason for the garnishees' failure to call as a witness the owner of the shovel

Margerum; by "secondary evidence" the plaintiff refers to the garnishees' check to Margerum in payment of the rental of the shovel. The "best evidence rule" has no application to a situation such as the present one. Mr. Mellon testified that payment in the sum of $168.00 was made to Margerum for the rental of the shovel. The check was introduced to corroborate this statement. The garnishees were under no obligation to call Margerum.

In *Wigmore on Evidence,* 3rd Ed., sec. 1286, at page 573, it is stated: "Apart from these few definite exceptions, [none of which are applicable to the present inquiry] there is *no general principle* that the 'best evidence' must be procured, in the sense that a *specific witness, presumably better qualified* than other competent witnesses, *must be produced or accounted for* before the others can be used." In *Canfield v. Johnson,* 144 Pa. 61, 76, 22 A. 974, our Supreme Court stated: "The rule that the best evidence of a fact must be produced . . . requires that where two different grades or qualities of proof exist, that which is the best shall be adduced, if practicable; as for instance, the contents of a writing must be proved by the production of the writing, before secondary evidence can be given. *But that rule has no application to a choice between witnesses, where both have legitimate knowledge of the subject-matter of the inquiry.* Some may have a better knowledge than others, but that will not exclude the knowledge of those who are the less informed, if it is otherwise competent. It is for the jury to judge of the sufficiency of the proof." (Italics supplied.) This language was quoted with approval in *Williamsport v. Citizens' Water & Gas Co.,* 232 Pa. 232, 249-250, 81 A. 316. In the present case it is clear that both Mellon, who paid the rent, and Margerum, who received it, had "legitimate knowledge of the subject matter of the inquiry"—the fact of payment and the amount of such rent. The au-

thorities cited above demonstrate conclusively that the trial judge did not err in his treatment of the plaintiff's objection to the evidence.

The plaintiff's other contention is that the court below erred in finding for the garnishees when it appeared that there was a balance of $5.00 due from them to the defendant. We are agreed that this contention is also without substance. It is the rule that in all attachment cases a garnishee "without fault" recovers costs. *Irwin v. P. & C. Railroad Co.,* 43 Pa. 488; *Barnes v. Bamberger,* 196 Pa. 123, 46 A. 303. A garnishee who makes answer to the judgment creditor's interrogatories in good faith, and accurately within practicable limits; and who takes no action calculated to delay or defeat any legitimate claim of such judgment creditor, is without "fault" in any sense of the word. Without question the present garnishees fall within that classification.

The action of the court below was a realistic attempt to obviate the necessity for pointless and circuitous proceedings and to do justice to the parties. The court was of the opinion that to enter judgment for the plaintiff in the sum of $5.00 and then to take the money from him upon petition of the garnishees for counsel fees and/or costs would have been a useless gesture, and we agree with this conclusion.

Judgment affirmed.